UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO ROGERIO DE ANDRADE VITELO, on behalf of himself and all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRAZZAZ, LLC & SERGIO AGUIRE,<br><br>Defendants. | No. 09 C 01051<br><br>Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mario Rogerio de Andrade Vitelo, ("Vitelo") is a former food and drink server of defendant Brazzaz, LLC, a Brazilian steakhouse restaurant. The original complaint alleges that Brazzaz and Sergio Aguire (collectively referred to as "Brazzaz") did not pay Vitelo and other employees the minimum wage required by the Fair Labor Standards Act ("FLSA"),[1] and the Illinois Minimum Wage Law ("IMWL") for a three year period. Now Vitelo seeks to amend the complaint to add a claim for recovery of overtime pay, and to add owner and manager of Brazzaz, Samuel Kochari ("Kochari"), as a defendant. Brazzaz opposes this motion, arguing that such amendments would be untimely because: (1) Vitelo brings this motion after the September 25, 2009, scheduling order deadline to amend has passed, and; (2) Vitelo does not establish good cause, which is specifically required when parties seek to amend after a scheduling order has been entered. Vitelo's motion to amend to add defendant Kochari is granted, and his motion with respect to the claim for overtime fees is denied [dkt.57].

---

[1] 29 U.S.C. § 201 *et seq.*

I. **Procedural Background**

On February 18, 2008, Vitelo filed his original complaint against Brazzaz, seeking unpaid minimum wage compensation for his employment at Brazzaz and any additional indemnification. The original complaint contained two counts against Brazzaz. On May 6, 2009, Brazzaz answered Vitelo's complaint, and brought four affirmative defenses. District Judge Coar entered a scheduling order on August 24, 2009, that required the parties to file amendments to the pleadings or actions to join other parties no later than September 25, 2009.[2] On January 21, 2010, both parties voluntarily consented to this Court's jurisdiction, pursuant to 28 U.S.C. 636(c)(1). On that same day, the parties submitted a revised, proposed, joint scheduling order that the court noted would be considered after the parties proceeded with their requested settlement conference.

On March 15 and again on April 13, 2010, the parties engaged in settlement negotiations before Magistrate Judge Valdez. Three months later, after two unsuccessful settlement conferences, the parties returned to this Court on April 26, 2010. At that hearing, Vitelo requested leave to file a motion to amend his complaint. By this time, the deadlines to amend in the schedule set by Judge Coar had passed. The deadline in the proposed scheduling order - given to the Court back on January 21, 2010 (but not entered) - provided that the parties had agreed to no further amendments.

II. **Allegations in the Complaint & Proposed Amended Complaint**

Vitelo alleges that during his time as a food and drink server at Brazzaz, he and other servers were paid below the minimum wage required by the FLSA and IMWL.[3] Under FLSA

---

[2] Def.'s Resp., exh. A.
[3] Pl's compl. ¶ 10.

and the IMWL, Brazzaz is not entitled to a tip credit.[4] Vitelo's complaint alleges, however, that when he received tips from customers, a portion of the tips were retained by the restaurant and allocated to ineligible employees.[5] The complaint further alleges that Vitelo, and similarly situated workers, were paid less than the minimum wage.[6] Vitelo, therefore, seeks unpaid wages, attorneys' fees and costs.

In his proposed amended complaint, Vitelo seeks to add Kochari as a defendant, alleging that he is a manager and/ or owner of Brazzaz. Specifically, Vitelo alleges that Kochari acted in the interest of an employer relative to Vitelo and other servers.[7] Vitelo also alleges that he and similarly situated workers are entitled additional overtime wages under the FLSA and IMWL, that Brazzaz underpaid.[8]

## III. Legal Standards

Motions to amend are governed by Federal Rule of Civil Procedure 15. Rule 15(a) is a liberal standard providing that a motion to amend should be granted unless there is "evidence of undue delay, bad faith, dilatory motive, prejudice, or futility."[9] Courts consider requests to include a party presented in a motion to amend under Rule 15(a), even though Rule 21 focuses on the joinder of parties.[10] When a scheduling order has already been set in the case, however, Rule 16(b)(4) dictates that to amend a scheduling order "good cause" must be shown and it must be "with the judge's consent."[11] Rule 16(b)'s good cause standard mainly considers "'the

---

[4] Pl's compl. ¶ 11.
[5] Pl's compl. ¶ 13.
[6] Pl's compl. ¶ 18.
[7] Pl.'s Proposed Amended Compl. ¶ 9.
[8] *Id.* at ¶¶ 26, 30.
[9] *Spano v. The Boeing Company,* 2007 WL 4390366, * 2 (S.D. Ill. Dec. 14, 2007) (citing *Guise v. BMW Mortgage, LLC,* 377 F.3d 795, 801 (7th Cir. 2004) ).
[10] *Spano,* 2007 WL 4390366 at * 2.
[11] Fed. R. Civ. P. 16(b)(4).

diligence of the party seeking amendment.'"[12] If the party then meets the good cause requirement in Rule 16, the party must demonstrate that the amendment was proper under Rule 15.[13]

**IV.    Discussion**

Brazzaz argues that Vitelo's motion to amend is too late. First, Brazzaz notes that it supplied Vitelo with the payroll records back on October 15, 2009. Those same records are what Vitelo now claims as the basis for his proposed new claim for overtime pay. Second, Brazzaz argues that Kochari's identity was known at the initial stages of discovery. Brazzaz then points to Vitelo's Rule 26 disclosures, where Kochari was listed as "Sam (Last Name Unknown) - Owner."[14] Finally, Brazzaz argues that this motion should be denied because Vitelo agreed, when the parties submitted their January 21, 2010 revised proposed scheduling order, that no further amendments would be made in the case.[15]

**1.    Application of Rule 15(a) and Rule 16(b)**

Before we examine the arguments, we must first determine the applicable standard to apply. Vitelo argues that only Rule 15 applies to this dispute because we did not adopt the proposed revised scheduling order, so there is no amendment deadline to modify. In that proposed order, both parties agreed that "[a]ny amendments to pleadings or actions to join other parties have been filed."[16] But that order was not entered. Brazzaz, however, refers back to Judge Coar's original scheduling order and argues that Rule16(b) governs.

---

[12] *Trustmark Ins. Co. v. General & Cologne Life Re of Am.,* 424 F.3d 542, 553 (7th Cir. 2010) (quoting *Johnson v. Mammoth Recreations, Inc.* 975 F.2d 604, 609 (9th Cir. 1992)).
[13] *Johnson,* 975 F.2d at 608.
[14] Vitelo's Initial Disclosures, Def.'s Opp'n, exh. C. p. 3.
[15] Proposed Scheduling Order, Def.'s Opp'n, exh. B. p. 1.
[16] Proposed Scheduling Order, Def.'s Opp'n, exh. B. p. 1.

When a party seeks leave to amend a pleading after the deadline of the scheduling order, Rule 16(b) and not Rule 15(a) governs.[17] This is because to not do so "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."[18] If good cause can be established under Rule 16(b), Rule 15(a) is then applied.[19]

After the two unsuccessful settlement conferences, when the parties were once again before the Court, no scheduling order was discussed. But there is no dispute that Judge Coar entered a scheduling order on September 25, 2009. And there is no dispute that the parties attempted to revise that schedule in January 2010, whereby they agreed that "[a]ny amendments to pleadings or actions to join other parties have been filed."[20] Either way, there was a scheduling order in place, and another that was prepared to be entered prior to the settlement conferences. This quite clearly puts this motion within the purview of Rule 16(b), rather than only within the more liberal standard of Rule 15(a).

**2.      Good Cause to Amend the Complaint**

Having determined that, in fact, Rule 16(b) is applicable here, we must address whether Vitelo has shown good cause to amend his complaint to: (1) add a claim for overtime pay; and (2) add an additional party. Our problem with this motion is that Vitelo does not explain why he waited so long to amend the complaint. Instead, Vitelo simply claims that no additional discovery is needed, and that Brazzaz will not be prejudiced by the amendments. As to Kochari, Vitelo explains that he did not know of Kochari's full identity,

---

[17] *Humphrey v. East Mfg. Co.,* 2003 WL 21361780 at *4 (N.D. Ill. June 11, 2003); *see also Mintel Intern. Group, Ltd. v. Neergheen,* 636 F. Supp. 2d 677, 689 (N.D. Ill. 2009).
[18] *Humphrey*, 2003 WL 21361780 at * 4; *see also Spano,* 2007 WL 4390366  at * 2.
[19] *Johnson,* 975 F.2d at 608.
[20] Proposed Scheduling Order, Def.'s Opp'n, exh. B. p. 1.

or importance, until the parties met for settlement. In applying the good cause standard, we must consider the diligence of the party seeking the amendment.[21] A party must show that despite his or her diligence, the time table could not have reasonably been met.[22]

   i.   **Overtime Claim**

First, as we noted, Vitelo does not state why he failed to seek the amendment to recover unpaid overtime pay before now. In fact, Vitelo admits that his claims for overtime wages are based on the same records necessary to establish the existing minimum wage claims. And those were provided to Vitelo in October of last year. We recognize that this would have been after the original September deadline for the filing of amendments (found in Judge Coar's scheduling order). But the problem is, Vitelo provides *no* reason for waiting for what has now been over six months to seek this amendment.

This is also not a case where, because of "rolling discovery" of thousands of pages of documents, the claim for overtime pay could not have been discovered earlier.[23] To the contrary, the applicable payroll records provided to plaintiff back in October are the only relevant documents, which Vitelo himself admits. So despite Vitelo's claim that Brazzaz "cannot be surprised" because the overtime claim "is self-evident on the face of [Brazzaz's] payroll records,"[24] we find that Vitelo has failed to show good cause for the delay. We make this determination despite Vitelo's claim that Brazzaz will not be prejudiced; specifically, Vitelo argues that the new overtime claim "requires only the application of a simple

---

[21]*See Spano,* 2007 WL 4390366 at * 2 (*citing Trustmark,* 424 F.3d at 553).
[22] *See Tshantz v. J.McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995).
[23]*Spano,* 2007 WL 4390366 at 3-4 (finding that due to the defendant's "rolling production" of documents, which totaled over 56,000 pages, the plaintiff's late attempt to amend was reasonable).
[24] Pl.'s reply at 5.

mathematical formula."[25] This alone does not establish "good cause."[26] Therefore, the motion to amend to add the overtime claim is denied.

### ii. Kochari

Brazzaz next argues that Vitelo has not shown good cause to add Kochari as a defendant and points to several reasons why it is too late: (1) nearly six months have passed since the first deadline for amendments; (2) Vitelo knew of Kochari back in September 2009, as evidenced by the Rule 26(a) disclosures; and (3) Vitelo agreed in the proposed scheduling order on January 21, 2010, that no additional parties or amendments would be added. As a final point, Brazzaz simply claims that Vitelo puts forth no reasoning, much less good cause, for this amendment.

Before we turn to those arguments, we must dispose of Brazzaz's comment, found in a footnote, that Kochari cannot be added as a defendant because he is not "an employer" as defined by the Fair Labor Standards Act ("FLSA"). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer..."[27] An individual with "managerial responsibilities" and "substantial control of the terms and conditions" of employees, is considered to fall within the definition of "employer" in the FLSA.[28] With only a one sentence argument provided by Brazzaz - in a footnote - and due to the "expansiveness of the Act's definition," we see no reason to deny Vitelo's motion on this basis.[29]

Turning to the substance of this dispute, essentially Brazzaz argues that Vitelo cannot show good cause because he undoubtedly knew of Kochari's identity when he first submitted

---

[25] *Id.*
[26] *See Tshantz,* 160 F.R.D. at 572 (stating that "[t]he fact that the Defendants arguably suffered no prejudice cannot be used to show 'good cause.'")
[27] 29 U.S.C. §203(d).
[28] *See Falk v. Brennan,* 414 U.S. 190, 195 (1973).
[29] *See Falk,* 414 U.S. at 195.

his Rule 26(a) disclosures. Brazzaz then refers to *Tschantz v. McCann* for support, where the plaintiff had notice that he was suing the wrong defendants a month before the deadline to amend passed, but yet failed to seek an amendment until after that date.[30] There, the parties discussed the fact that the wrong defendants were being sued in open court and the same was confirmed, thereafter, when the plaintiff received the Rule 26(a)(1) disclosures.[31] So there was no question that the plaintiff was on notice within the proper time to amend.[32]

The distinction here, however, is that Vitelo was not given clear information on Kochari's identity, which is supported by Vitelo's Rule 26(a)(1) disclosures, identifying him only as "Sam (Last Name Unknown) - Owner." Vitelo explains that it was not until the parties' settlement conferences on March 15, 2010, and April 13, 2010, that it was made clear who Kochari was and that Vitelo would not recover his damages without an "an additional source of indemnity."[33] (Apparently, this additional source of indemnity is Kochari, although Vitelo does not explain how this came to be known).

Brazzaz concedes that Vitelo's reason to add Kochari as a defendant - because Brazzaz does not have enough money - would generally suffice as "good cause." But because he waited over six months to do so, Brazzaz believes Vitelo's actions fall short of the "good cause" requirement. We disagree. Although we acknowledge that Vitelo has somewhat questionably sat on the limited information he had about Kochari, we hesitate to conclude that Vitelo has shown no good cause. Similar to when information is learned in a

---

[30] 160 F.R.D. at 571-72.
[31] *Id.*
[32] *Id.*
[33] Pl.'s Reply at 2.

deposition, and amendments are then sought, here too discovery was - and is - still open.[34] Vitelo acted quickly after the settlement conferences to file his motion to amend, and we find that sufficient to establish "good cause." And because no additional discovery will be required - though it has nonetheless been extended to September 27, 2010 - this amendment does not prejudice Brazzaz.

**V.     Conclusion**

Vitelo's motion is granted as to his request to add Kochari as a defendant and it is denied as to the claims for overtime wages [dkt. 57].

**IT IS SO ORDERED**.

**ENTERED: August 16, 2010**

                                            **UNITED STATES MAGISTRATE JUDGE**
                                            **Susan E. Cox**

---

[34] *See Navarro v. Redel,* 2008 WL 750572 at * 1 (E.D. Wis. Mar. 19, 2008)(finding no undue delay or bad faith where the defendants filed their motion to amend soon after the discrepancy was discovered during a deposition).